did not hear the directives. I will repeat them. Now, obviously, the lawyer on the phone does not have to wear a mask. Everybody else does except when you are presenting your case. Please recall that when you are talking about the records, you need to give us a record site and rebuttal is for rebuttal only. And our attorney that's on the phone, I would just remind you to please speak loudly and clearly. That's always a good idea, whether you're in the courtroom or on the phone, but particularly on the phone, we want to be sure and hear. So with that, we will call case number 19-60760, Arulnanthy v. Garland, and we will begin with counsel for the petition. May it please the court. My name is Viswanathan Rudrakumaran. I represent Petitioner Jeevithan Arulnanthy in this matter. Your Honor, in this matter, there are four issues in this case. The first issue, whether the BIL legally erred in dismissing his claim based on his ethnicity and objective factor, based on his status as a putative failed asylum seeker and objective factor. That's the first issue. The second issue, whether in spite of the adverse credibility finding, whether the BIL legally erred in denying his asylum claim based on his ethnicity and based on his putative status, sorry, status as a putative failed asylum seeker. And the third issue, whether the BIL legally erred in failing to consider both issues, the ethnicity and the putative failed asylum seeker status in conjunction. And the fourth issue, whether even the past experience, whether the BIL's adverse credibility finding is supported, which is primarily relied on the alleged inconsistencies between the credible fear interview and his testimony is supported by substantial evidence. These are the four issues before it, Your Honor. With respect to the first issue, Your Honor, our position is, as we stated in the brief and the reply brief, the BIL's adverse credibility finding pertains to his past experience. This court has addressed in Chan versus INS, Your Honor, in some cases, where the court has said, when there is an adverse credibility finding, your claim is doomed. That's it. That's the end of the story. But in those cases, there was only one factual basis. For example, in Chan's case, there's only one factual basis, that she was forced to subject to your argument that the future you've also brought some other evidence besides simply his testimony and that the IJ and the BIA should have looked at that. I understand that argument. But on the asylum point, isn't his subjective fear directly an issue? And so if he lacks credibility, would that not end the issue of the asylum, even based on the future? Sure, Your Honor. But first, implicit in your question, Your Honor, that with respect to withholding of removal and with respect to protection under the Torture Convention, that is not an issue. Because the subjective element is not a component with respect to the withholding of removal. Oh, I know, the CAT. I understand that. I'm asking about asylum. Yeah, asylum, Your Honor, the fact that he said that, you know, in the cases which I have cited, Your Honor, Paul v. Gonzalez, adverse credibility finding, so there was no subjective element with respect to his past experience. Ganga Kumar v. INS, the 11th Circuit case, is a similar case like another Sri Lankan Tamil, adverse credibility finding. So no subjective element with respect to that particular claim. But it doesn't negate the fact there's no subjective element whatsoever in any kind of a claim that the courts have not held that, Your Honor. So the other circuits have held that even in spite of adverse credibility finding, you can win a case, you can prove you are eligible for asylum based on the other factual basis. I guess I'm not understanding how you can, I mean, again, I understand you don't think your client was lacking credibility, and I respect that, but let's assume, arguendo, he was lying. Then how can he prove, I mean, the fact that I might be afraid of this lamp over here doesn't mean that Judge Oldham is also afraid of that lamp. So, to me, the notion that somebody could be afraid of something does not prove subjectively that they are, and so if they have lied about everything else, then how can they prove that? Again, I'm just talking about the asylum. I understand the cat issue is a different issue. Yes, Your Honor. No, no, the thing is, I think that if we are trying to invoke the fellows, if you are not believable in one aspect, the whole thing is not believable. I think that maxim is not being upheld universally, Your Honor. The Seventh Circuit has set that kind of a maxim. Well, no, I mean, I understand that somebody could lie about, you know, their age, but tell the truth about their name, but what I'm saying is, we aren't here to decide this case de novo. We're here to look at what was decided, and you could conclude that because somebody lied about A, B, and C, they also are lying about D, and I don't understand why that isn't enough to support the denial of the asylum. No, because A, B, and C may be dispositive for one particular claim, but D is dispositive for another claim, Your Honor. So, with respect to past experience, yeah, we don't believe you, so that's the end of the story. But here, you know, there's no basis. Just because you lied about your name, then the assumption you are lying about the age, it doesn't necessarily correlate that one. That's an objective factor, so the court should have analyzed. Here, the BIA did not even analyze that. They simply said, we made finding A, B, C, you are not credible, so D, you are not credible. They did not even bother to see whether is there any evidence in the record to see whether he has a viable claim. In fact, this issue was raised before this court, Your Honor, in another Sri Lankan case, but in that case, the court dismissed the claim, but not on the merits. The court dismissed the claim because that issue was not raised before the BIA, so failed to exhaust the administrative remedy. So, this court did not dismiss that claim on that ground, Your Honor, saying that adverse credibility. This is Suresh versus Williams. I'll give you the citation in the rebuttal, Your Honor. So, then I moved to the Kat claim. Kat claim, as the court agreed, is a different story, Your Honor. So, but here, the BIA simply denied Kat claim also. And then third one, we argue, Your Honor, that both factors should be taken into, in conjunction. And I cited a case, Viswakumar versus Thamodar, but I also have to bring to the court attention, but in a subsequent case, the 11th Circuit denied that kind of a claim in a footnote. But then the Viswakumar case went to the 11th Circuit. Again, they issue an opinion last month vacating the BIA's order. So, our second, third argument, you should take both in conjunction. Also, the fact I put BIA unpublished opinion. We are the UN, the Human Rights Convention Against Human Rights Committee. Combine both factors. Tamil asylum seekers, they didn't simply say asylum seeker. They combined both factors, Tamil ethnicity and also the putative felt asylum seeker. So, our argument, the BIA erred on that point. Then we go to the credibility argument, Your Honor. The credibility argument, the primary rationale for the BIA, there is inconsistency between the credible fear interview and also between his testimony. This court addressed that issue in Singh v. Satyashat couple of years ago. In Singh v. Satyashat, this court said, there are two things the court said. First, the petitioner did not challenge the accuracy of the interview. Second, the petitioner did not state that there was no follow-up question in that interview. So, taking in those two factors, this court said that we give due credence to the credible fear interview and the inconsistency is sufficient. In this case, we challenge the accuracy of the credible fear interview. We said that he did not say that he was arrested. The words were put into his mouth by the asylum officer. The asylum officer... But we're really not in a position to dig into that. I mean, those are fact findings. Looking at the accuracy, looking at that, that's what the IJ does and the BIA reviews. And so, yes, of course, if there was evidence that showed that you absolutely... I mean, there are situations, obviously, where we rule on the facts but that's only a lack of support for the facts. Not we decided the facts differently than the IJ. No, no, no. In Singh v. Association, this court said, Your Honor, that one of the reasons, one of the guidelines they will follow to see whether they have also follow-up questions. That is a factual finding. But the court said that they will look into that one in Singh v. Association. In Singh v. Association, this court also said that we will look into the accuracy. Yeah, I mean, we look at whether there's substantial evidence to support what was found. Yes, Your Honor. The term substantial evidence, as you know, doesn't mean like, you know, pounds and pounds of evidence. Yeah. And so, but we can't sit around and say, well, you know, we would have decided this case differently on the facts, so we will decide it differently on the facts. I mean, we are not fact finders. Yeah, but if the court thinks that's a compelling evidence that we would have decided on the other way, if the facts are according to the record, that is a compelling evidence. Because one of the arguments the government in the brief said that in the asylum application also he said that he was taken by the CID. But that's not true. If you look at page 1041, the correction was made there. Before the hearing was started, the immigration judge himself made a correction that saying that he was asked to come. So the government's argument is not correct factually. If you look at page 1077, credible fear interview, they asked him, okay, what happened in January 2018? The next question he asked simply, so why can't you go back? What's your fear? He did not ask any follow-up question. Did you have any other problem? Did you sustain any other? No, nothing. He simply asked what happened in 2018, January, the next question. Okay, why can't you go back? And even the third incident comes into play, not about his problems. The third incident comes into play. He said, okay, he said two reasons he was having problem, because he was running for election, and then he attended a memorial service. So the asylum officer asked him, okay, now you told them already that you are not going to run for election, so what's the problem? Why can't you go back? Then only the third incident came into play. He said, no, they came and threatened me about attending the memorial service. So there was no follow-up. Even if you look at the summary on page 1077, he didn't even mention the January incident. He simply said, okay, you were arrested, you were harmed. That's three lines. He didn't even mention even that one particular incident. And there's nothing in the record indicate that question and answer was read to him in his own language. Nothing. It's only the summary, four lines. The summary talks generally. Okay, you had problem, that's it. The one particular incident that everybody now agrees. So if you take all those things, and the corroboration, as the government also rightly said, we are not talking about corroboration separately, because the BIA did not go into that one. We are talking about corroboration in the context of the credibility finding. So we raised one argument in the brief. The IJA did not ask, why your mother's affidavit is not there? The government argued, no, you did not raise that issue before the BIA. Our argument, in the context of credibility, that's a subsidiary argument. That is not a new argument. That is a subsidiary argument. So we don't have to raise it before the BIA. That's all, Your Honor, at the moment. Then I'll come back. Okay, all right. Thank you very much. We appreciate your argument. You've saved time for rebuttal. And we'll give you a minute to sit down before we call on your opponent on the phone. All right. We'll now hear from the attorney for the government. Good morning, Your Honor. May it please the court. Remy Derocha Afudu, representing the respondent, United States Attorney General. The court should deny the petition because substantial evidence supports the agency's adverse credibility finding. I would like to start by addressing Petitioner's cat claim, Your Honor. Because Petitioner's claim for cat protection relied on the same factual predicate, the adverse credibility finding is dispositive. But wasn't there other evidence presented about just kind of Sri Lanka and how it's treating the, I don't know how to pronounce it, the Tamils? Yes, there is evidence, Your Honor. A lot of evidence in the record showing, submitted by Petitioner, indicating that some returnees from, mostly from Australia, were maltreated. But if you look at the record, Your Honor, most of those were from studies conducted between 2014 and 2017. They are mostly stale because there have been changes. The U.S. Department of State report, as the courts have held, is the best and most reliable source of information. And the 2018 report in the record is silent on the matter of returnees. On page 175... Well, of course it could be silent because people have stopped returning rather than because all of a sudden the government is now being respectful of Tamils. I'm sorry, Your Honor, I didn't hear your question. Okay, my point is, you said 2018 was silent. To me, that could be because people stopped returning from Australia or wherever. It does not prove that the government now is treating Tamils respectfully or appropriately. Does it? Well, it's silent on the issue of returnees, Your Honor, but the record actually, on pages 181 and 182, talked about steps that were being taken to protect Tamils. It says that security forces regularly monitored and harassed members of their community, but it doesn't talk about torture. And it also stated that the government had a variety of ministries and presidentially appointed bodies designed to address the social and developmental needs of the Tamil minority. So a lot has been done in terms of reconciliation efforts by the government to take care of the issues of the Tamils. And one point that the board did make, Your Honor, that I'd like to refer the court to, on page 9 of the decision, it states that petitioner relied primarily on evidence of general country conditions in Sri Lanka. And the board was correct in that regard, Your Honor. Petitioner did not provide any testimony whatsoever about the fact that he would be tortured in Sri Lanka upon his return. He relied basically on country reports. Under CAT law, Your Honor, it is very clear that there has to be a showing of an individualized risk of torture. The fact that... But why isn't being a Tamil... ...is to be considered, then why isn't the fact that he is a Tamil enough to show that he's going to be treated differently than someone who isn't? It is not enough, Your Honor. And if I may, Your Honor, the evidence from Australia in the record did not say that just being a Tamil is a per se reason for being persecuted or tortured. It didn't even use those words, Your Honor. On page 262 of the record, where the Australian government's report is, it talks about people who are suspected of being LTTE militant members and those who departed illegally are the ones who are usually harassed when they return. For example, a petition to Sri Lanka. Petitioner does not fit into that mold. He was not a former LTTE militant and he did not provide any testimony stating that it would be imputed upon him. Membership in that particular group would be imputed on him. He was a member of another party, a TNAP. He was not a militant. And so this would not apply to him. The country conditions report indicating that there may have been at some point harassment of people returning from Australia and maybe other parts of the world would not apply to him. It does state, specifically on page 260, that all returnees are subject to these standard procedures regardless of ethnicity and religion and that the detainees are not subject to mistreatment during processing at the airport. So basically, Your Honor, there is nothing in the record to show that petitioner will be tortured  Furthermore, Your Honor, without getting into the merits, because the board did not get into the merits, the board used the adverse credibility ruling under the falsus in uno, falsus in omnibus rule to dispense of petitioner's CAT claim. Petitioner has not indicated how officials in Sri Lanka would know that he applied for asylum in the U.S. because asylum applications are confidential. Moreover, petitioner was removed to Sri Lanka on January 28, 2020 because this court denied his stay motion. There is no report from petitioner's counsel that he was persecuted upon his return or even harassed. And finally, as a policy issue, Your Honor, there is a danger in ascribing merit to such claims because it would encourage failed asylum seekers to use this avenue to seek asylum unless there is some clear-cut evidence that this happens to the vast majority of people who return to Sri Lanka, to Tamils who return to Sri Lanka. So overall, Your Honor, the agency's adverse credibility finding should be upheld even within the context of petitioner's CAT claim. Let me ask you about the asylum issues that I discussed with your opponent. If, in fact, you know, the... So we know that there was an adverse credibility finding. How does that connect with, or does it connect with, the need to show subjective fear of future harm  It ties in, Your Honor, because under the doctrine of falsus in uno, falsus in omnibus rule, petitioner has not provided any evidence whatsoever based on this incredible testimony that, you know, he has a credible fear of future persecution. As we... The standard in this court, Your Honor,  is that there is no presumption of credibility under the REAL-ID Act. And also, petitioner's claim of future persecution is not... There's no presumption of persecuted future... No, but, I mean, should we send this back for the IJ to weigh that issue? No, Your Honor, I don't believe we should send it back because the adverse credibility claim, the adverse credibility ruling encompasses petitioner's entire claims. If he cannot be believed on one issue, if he cannot be believed on his claim, the chief claim, where there were several instances in the record which were not corroborated, which he failed to provide any plausible explanations for, I mean, this court should uphold the IJ's decision. It should not be remanded on that basis, Your Honor. Okay, so I just want to be clear on your cat argument. It is that you could rely on country evidence even if you were not credible, but that here the country evidence does not support the cat argument. Is that a fair summary of what you said? Yes, Your Honor, if I heard you correctly, the anecdotal evidence in the record of country reports does not support petitioner's cat claim because it does not say that Tamils are per se... If you're a Tamil, you're automatically subject to being persecuted or tortured upon return to Sri Lanka, and the government has taken steps to address that issue, and that's also in the record. The report from the Australian government, which is the most authoritative in the record and that deals with this issue, does not state specifically that all returnees are subject to these standard procedures regardless of ethnicity and religion. Is there a late... United Nations agency that examines the situation in Sri Lanka? Thank you very much, Your Honor. In fact, there is already the 2000 report, the human rights report from the Department of State, and that also does not indicate that there is a continued... As petitioner alleges that there is a practice of persecuting returnees from the United States or wherever the people come from all over the world returning to Sri Lanka. Even if... What is the... If I wanted to know what are the latest conditions with respect to any misconduct on the part of the government now toward Tamil, where would I look to understand what is the situation today? Is there any source? That would be the latest human rights report on Sri Lanka by the Department of State, the 2020 report, which the court can take administrative notice of. Nowhere in that report does it mention the persecution or torture of asylum seekers or even of Tamils. Or of anyone at the present time. At the present time, yes, Your Honor. And 2020 is the latest official and formal information that we would have that addresses the subject. Yes, Your Honor. And even the 2018 report from Australia, which discusses this index, discussed questioning of former LTT militant members and those who departed the country illegally. And neither applies to petitioner. So remand would be totally futile, Your Honor. And as stated also by the board, petitioner did not provide one shred of evidence that he would be tortured based on his ethnicity as a Tamil when he returns to Sri Lanka. He stated for the record that he would be tortured on page 147 of the record. He said if he were returned back from here without a passport, the CID officers who tortured him in the past would be notified, they would know, and his life would be in danger. So it was the same incredible testimony that he presented that he used. And that is why the agency relied on that. I mean, anyone can file an asylum application, Your Honor, and put all kinds of information in there and say because I'm Tamil. Okay, now in this case we are told that he introduced a lot of evidence that addresses the situation in Sri Lanka that reflects persecution, torture, and so on. Now, first, what does the information that he provided in connection with the immigration proceeding, what does it show, and how timely is that evidence? Again, Your Honor, a lot of that evidence which the petitioner had to update were from 2014. A lot of the recent evidence that the petitioner submitted did not show that he would be tortured based on his ethnicity as a Tamil. That is not supported in the record. The studies conducted between 2014 to 2017 had no application on his case, which was heard in 2018. And a lot of the studies from 2018 did not show that he would be tortured or persecuted based on his status as a Tamil. In fact, again, I reiterate that the United States State Department report, which is the best and most reliable source of information on this, talks about the steps that the government has taken. It replaced military... I'm quoting from page 181 to 82. The government replaced military governors of the northern and eastern provinces with civilians. And that's the area where the Tamils usually are, where they live. The Office of National Unity and Reconciliation, which was established by the President in 2016, continued to coordinate the government's reconciliation efforts in terms of promoting social integration, building an inclusive society, securing language rights for all citizens, and supporting a healing process. So Petitioner was just cherry-picking and using these stale records to show, reports, to show that he would be persecuted based on the fact that he's Tamil. And again, the fact that some other courts have addressed this issue is of no moment here because in those cases, as in one of the cases that Petitioner submitted, that was based on the fact that Petitioner would be assumed to be a former LTTE militant member. Each asylum case is different. There are different sets of facts. Petitioner did not present that fact here at all. He basically argued that because of his past persecution or harm in Sri Lanka, he would be subject to harm, and the court found that his testimony was incredible. So based on that, Your Honor, the agency's captive decision definitely should withstand judicial review, and we're asking that the court not remand on that basis. All right, you have about two minutes left. Do you have anything else you want to say? Yes, so if I may, Your Honor, Petitioner's testimony, as the government continues to maintain, was inconsistent with his statements during his credible fear interview. It's delineated in our brief. And again, under this court's ruling, in Deo v. Holder, which is what the board relied on, that incredible decision that Petitioner's ruling, Petitioner's testimony was not credible applies to the asylum claim, especially because Petitioner did not provide any individualized risk of torture. He relied solely on documentary evidence in the record, which most of it was still from 2014, and there is evidence in the record that the government has taken steps to address the issue, and especially focusing also on the report from Australia, which shows that basically, again, regardless of ethnicity and religion, all returnees are subject to standard procedures at the airport because they're trying to identify criminals and militants. And again, Petitioner has been removed to Sri Lanka over a year ago, and there's no report that he was persecuted. All right, thank you very much for your argument, and we appreciate it, and we'll now hear a rebuttal. Thank you, Your Honor. Now let me ask you, if we look at all of this information, this documentary information, that your client furnished the immigration services,  that would be helpful to your client relating to information that has occurred since 2019? Your Honor, my initial response, Your Honor, because we don't have to go into that detail because the board did not say the evidence has stayed. Nothing happened after 2019. The board did not say that only LGBT people are harmed. The board simply said, you rely on the general condition. The next word the board say, however, we don't care. I understand, but if we remanded it to the board to consider the documentary evidence that supported his claim, what is the strongest information in his favor that we would find that has occurred in Sri Lanka since 2018? Your Honor, I don't have anything. At the moment, I'm not in a position to pinpoint one particular page after 2018, but before the BIA, the council has put a number of pages, Your Honor, stating the torture and everything is happening. I'm sorry, I'm not in a position to pinpoint a particular page. We are after 2018, but our position— Tell me about it. Tell me about it. Don't tell me the page number, but tell me what I would find if I looked at that information post-2018. Your Honor, there's one particular incident. The International Truth and Justice Report is a well-known NGO. They put a report saying, after this new government came into power, in the Yosef camp, there is an army camp, there are people assigned to monitor who are the returnees from overseas. That happens after this 2018, Your Honor. That's a particular incident mentioned in the record and also mentioned in the briefs. Let me ask you then about the state report department, the state department report of 2021 to which government's council referred. She says, I'll look at that and I will come away with the conclusion that your client's claim is unjustified. Now, what do you say about that particular report? Your Honor, the state department report did not talk about return asylum seekers. From 2009 onwards, for the last 10 or 15 years, the state department never talked about the plight of return asylum seekers. In spite of that, the same argument government raised in the 11th Circuit, Ganga Kumar v. Attorney General, the same argument, the 11th Circuit said, that's not the only evidence you look into. State department report is not the only evidence you look into. You look at the other evidence and then the 11th Circuit said... I understand, but are you telling me that the 2021 report of the state department is biased and unreliable from your point of view? No, Your Honor. Actually, the situation has changed. The government did not say. When did the situation change? Since 2021? Since 2020. After my client got deported, after this case was finished, the new government came into power and the U.S. State Department, in fact, issued a sanction of one of the ministers because of the war crime. If you look into what's happened in the last two years, after 2020, the situation has gone worse than my client was at the time. But even though we can't consider what's happened that's not in the record, if we were to remand it, wouldn't what actually happened to your client be part of that record? And you haven't indicated that something terrible happened to him, so wouldn't that sort of defeat all of this? Even though I understand we can't decide those facts, but if we remand them to the DBIA to send to the IJ... Our position is that this court's jurisdiction can fail only on their record, Your Honor. But at the same time, the Third Circuit also recognizes this problem in Berkshire v. INS, and they remanded the case. They asked the BIA to remand it to the IJ to get the new facts, what's happening now. So if the court wants to go on that route, Your Honor, I think that's the proper way, to send it to the IJ, get new evidence, and see what's happening. But the BIA didn't care anything about that, Your Honor. BIA simply said, in the opinion, the last line, we don't care about the country condition because you are not credible. That's the end of the story. I understand your argument on that. One more thing, Your Honor, that the court... Very quickly, because you're... On the thing that the subjective element, Your Honor, this issue was, the Second Circuit also struggled on this issue because in Ramachari v. INS, the Second Circuit said that if you are not credible, everything is closed. But in a subsequent case, Your Honor, Paul v. Gonzalez, the Second Circuit addressed this issue in a footnote, that when you make an adverse credibility finding pertaining to the subjective element, what happens to the subsequent case? The Second Circuit addressed that issue. That's in my favor, Your Honor. All right. Thank you. Your time is up. We appreciate your argument. We also appreciate opposing counsel by phone and hope that everything... We appreciate Ms. Engelhardt putting that together, and we appreciate you being here live. We appreciate your opponent being here by phone. The case is now under submission, and we will...